JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES            Date: May 19, 2023

Title: MSP RECOVERY CLAIMS, SERIES LLC ET AL. V. AVANIR PHARMACEUTICALS, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [62]**

Before the Court is a Motion to Dismiss ("Motion") (Dkt. 62) brought by Defendant Avanir Pharmaceuticals, Inc. ("Avanir" or "Defendant"). The Court heard oral arguments on January 30, 2023 (Dkt. 68). Having reviewed the parties' briefings, the Court **GRANTS** Defendant's Motion.

### I. Background

#### A. Facts

Defendant Avanir is a biopharmaceutical company that "manufactures, markets, and sells" a drug product under the trade name "Nuedexta" for the treatment of pseudobulbar affect ("PBA"), a condition characterized by episodes of sudden and uncontrollable laughing or crying that do not reflect a person's actual emotions. FAC ¶¶ 1, 2, 45. Plaintiffs allege that PBA is the resulting cause of a neurological disease,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES                                                  Date: May 19, 2023

Page 2

including a stroke, dementia, traumatic brain injury, and Parkinson's disease. FAC ¶ 46. Plaintiffs estimate that 0.5% to 2% of Americans suffer from PBA. FAC ¶ 47.

      Plaintiffs MSP Recovery Claims, Series LLC ("MSPRC") and MSP Recovery Claims Series 44, LLC (collectively "Plaintiffs") are companies that have allegedly received irrevocable assignments of all rights "to recover reimbursement or payment from Defendant." FAC ¶ 21. Plaintiffs' purported assignors ("Assignors") provide health insurance coverage, pursuant to Medicare Part C and Part D, Medicaid, and commercial contracts for insurance, to persons that subscribe to their plans ("Enrollees"). *Id*.

      MSPRC has established various designated series to maintain claims recovery assignments separate from other company assets. FAC ¶ 23. MSPRC alleges that pursuant to its limited liability agreement, all designated series form a part of MSPRC, meaning MSPRC has the right "to sue on behalf of each series" and "pursue any and all rights, benefits, and causes of action arising from assignments to a series." *Id*.

      Plaintiffs allege that from 2017 to 2018, a group of six Medicare health plans irrevocably assigned all of their rights and claims to recover against Defendant for payments made for Nuedexta on behalf of their Enrollees to MSP Recovery LLC and/or MSP Recovery Claims Series 44, LLC, which thereafter assigned such rights and claims to various designated series of MSPRC. FAC ¶¶ 25-43. Those health plans include: Summacare, Inc.; Network Health, Inc.; Fallon Community Health Plan, Group Health Incorporated and Health Insurance Plan of Greater New York; ConnectiCare, Inc.; and Health First Health Plans, Inc. *Id*. Accordingly, each of the six Assignors has allegedly authorized Plaintiffs to file suit against Defendant on their behalf. FAC ¶ 23-24.

      Plaintiffs allege that Defendant participated in an unlawful scheme to increase sales of Nuedexta by misrepresenting the prevalence of PBA and FDA-approved uses of Nuedexta and causing Plaintiffs and their Assignors to pay for legally false claims in violation of Medicare rules. FAC ¶¶ 53-62; 67-74; 76-88. Through its alleged scheme, Defendant purportedly induced the Assignors to "include Nuedexta in their formularies largely without any prior authorization or restrictions" and caused the Assignors to pay for "not-medically-necessary Nuedexta prescriptions for patients who did not have symptoms consistent with PBA and had no prior PBA diagnosis." FAC ¶¶ 14, 73. Moreover, Plaintiff allegedly provided kickbacks to physicians and other health care providers as an inducement to prescribe Nuedexta to patients for off-label uses. FAC ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES                                                Date: May 19, 2023

Page 3

### B. Procedural History

On May 20, 2022, MSPRC filed its original complaint (Dkt. 1) in this Court alleging causes of action for violations of 18 U.S.C. §§ 1962(c) and (d), unjust enrichment, common law fraud, and conspiracy to commit fraud. On October 20, 2022, the Court granted Defendant's motion to dismiss (Dkt. 28) with prejudice as to MSPRC's causes of action for unjust enrichment, common law fraud, and conspiracy to commit fraud. The Court granted with leave to amend MSPRC's causes of action under 18 U.S.C. §§ 1962(c) and (d) (Dkt. 57).

Plaintiffs MSPRC and MSP Recovery Claims Series 44, LLC filed the FAC on November 14, 2022. The FAC alleges violations of 18 U.S.C. §§ 1962(c) and (d) (Dkt. 60). Defendant filed the instant motion (Dkt. 62) on December 12, 2022. Plaintiffs filed their Opposition ("Opp'n") (Dkt. 65) on January 9, 2023, and Defendant replied on January 16, 2023 (Dkt. 67).

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES　　　　　　　　　　　　　　　　　　Date: May 19, 2023

Page 4

are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

　　　　When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

　　　　Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

　　　　However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

### III.　Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-01026-DOC-KES									Date: May 19, 2023

Page 5

Defendant moves to dismiss the FAC on the following grounds: (1) Plaintiffs' allegations about off-label marketing and kickbacks are insufficient, (2) Plaintiffs do not plead that Avanir made any false or misleading statements about the prevalence of PBA, (3) Plaintiffs do not plead any false or misleading statements made by Avanir about FDA-approved uses of Nuedexta, (4) Plaintiffs cannot rely on violations of Medicare rules to sustain RICO claims based on mail and wire fraud, (5) Plaintiffs' RICO claims are barred under the indirect purchaser rule, (6) Plaintiffs fail to satisfy RICO proximate causation requirement, (7) Plaintiffs fail to adequately plead a RICO enterprise, and (8) Plaintiffs' claims are not covered by their assignment agreements. *See generally* Motion.

**A. Section 1962(c) Claim**

RICO creates a private right of action to recover damages for racketeering or the collection of unlawful debt, i.e., Civil RICO. 18 U.S.C. § 1961. To establish liability under 18 U.S.C. § 1962(c), a plaintiff must prove that the defendant (1) conducted or participated in the conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity, (5) causing injury to the plaintiff's business or property. *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). A "pattern of racketeering activity" is established when a plaintiff proves that a defendant committed two or more predicate acts, which include mail and wire fraud. 18 U.S.C. § 1961(5); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).

In its original complaint, MPRC alleged that Defendant committed mail and wire fraud by promoting Nuedexta for off-label uses and incentivizing physicians through illegal kickbacks to prescribe Nuedexta to patients who had never been diagnosed with PBA. Dkt 57 at 9. The Court dismissed Plaintiff's allegations as insufficient because "off-label promotion of a drug does not violate RICO," and "violations of anti-kickback statutes are not predicate acts under RICO." *Id*.

Plaintiffs now bring three additional allegations in support of their § 1962(c) claim. The Court addresses each allegation, in turn.

**i.     PBA Prevalence**

Plaintiffs allege Defendant misled the public about the prevalence of PBA to create the expectation among health care providers that a large portion of their patients

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES                                                              Date: May 19, 2023

Page 6

with certain neurological disorders are also suffering from PBA. FAC ¶ 88. Specifically, Plaintiffs allege Defendant "more than doubled" its PBA prevalence claims from less than one million people in the United States in 2006 to well over two million in 2010 and introduced "the altogether novel idea that many patients suffer from *mild* forms of PBA" as opposed to moderate to severe PBA. FAC ¶¶ 79, 87.

The Court finds Plaintiffs cannot plausibly claim Defendant misled the public regarding the prevalence of PBA in the US. The FAC asserts that PBA is a condition affecting 0.5% to 2% of Americans—about 2 to 7 million people. FAC ¶ 47; Opp'n at 7. Plaintiffs simultaneously contend that Defendant fraudulently inflated its PBA prevalence figures by estimating the number of people with PBA to be 1.8 to 2 million. Opp'n at 8. Because Defendant's estimates are more conservative than the figures cited by Plaintiff, it cannot reasonably be said that Defendant unlawfully overstated PBA's prevalence. Moreover, Plaintiffs make no attempt to plead that Avanir's estimates of PBA prevalence were untrue at the time they were made. Merely alleging that Avanir more than doubled its estimates over the course of 4 years is insufficient to support a reasonable inference of fraud under § 1962(c), as Plaintiffs provide no facts to show that these figures were false or misleading.

Plaintiffs also allege that since 2013, Avanir has directed its sales representatives to distribute summaries of "an Avanir funded and generated article" known as the "PRISM study" in order to promote Nuedexta as a treatment for *symptoms* of PBA and not PBA itself. FAC ¶ 80-82. Yet Plaintiffs fail to state with particularity a single specific instance in which Defendant or its sales representatives misrepresented the PRISM study. Nor do Plaintiffs explain how this allegation is any different from off-label promotion of Nuedexta, which the Court previously regarded as insufficient to a state a Civil RICO claim.

Thus, Plaintiffs do not adequately allege fraud through their arguments on PBA prevalence and the PRISM study.

### ii.     FDA-Approved Uses of Nuedexta

Next, Plaintiffs allege that Defendants made false and/or misleading statements regarding the scope of FDA-approved uses of Nuedexta. Opp'n at 9. Plaintiffs argue that from October 2010 to January 2015, Nuedexta's FDA-approved label stated as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES                                      Date: May 19, 2023

Page 7

> NUEDEXTA is . . . indicated for the treatment of pseudobulbar affect (PBA). Studies to support the effectiveness of NUEDEXTA were performed in patients with underlying amyotrophic lateral sclerosis (ALS) or multiple sclerosis (MS). *NUEDEXTA has not been shown to be safe or effective in other types of emotional ability that can commonly occur, for example, in Alzheimer's disease and other dementias*."

FAC ¶ 92. Despite this limitation, Defendant allegedly marketed Nuedexta "for patients with disorders more common than PBA, including Alzheimer's and dementia." FAC ¶ 85. By redefining PBA to include these other diagnoses, Avanir purportedly sought to broaden the market of people who would be eligible for Nuedexta. *Id*. Plaintiffs contend that Nuedexta has been approved by the FDA to treat a single condition, PBA, and Avanir is prohibited from promoting the drug as a treatment for any other condition such as dementia or Alzheimer's disease. FAC ¶ 91.

However, the FAC cannot set out a plausible theory of fraud without identifying any statements that Defendant allegedly made regarding Nuedexta's FDA-approved uses. To this point, Plaintiffs argue that Avanir published studies in 2010 and 2013 which indicated that PBA was present in certain patients with Alzheimer's disease. Opp'n at 11. Nowhere do Plaintiffs allege whether these studies make any claims about FDA-approved uses of Nuedexta. At best, Plaintiffs merely allege that Avanir's studies were designed to promote Nuedexta for off-label uses, including the treatment of PBA arising from Alzheimer's disease. But as this Court has already ruled, promotion of a drug for off-label uses is not a predicate act under § 1962(c). Plaintiffs further contend that in Avanir's 2014 Annual Report, it "stressed the importance of misrepresenting PBA" by stating:

> [A]lthough our approved product label is indicated to treat PBA, without regard to the underlying neurological condition, it is possible that physicians, the FDA's Office of Prescription Drug Promotion ("OPDP"), payers or others may interpret the label more narrowly than the FDA's Division of Neurology Products approval for a broad PBA label and *believe that PBA secondary to certain conditions, such as Alzheimer's disease, is not an indicated use. If such misinterpretations are widespread, the actual market size may be smaller than we have estimated*.

Case 8:22-cv-01026-DOC-KES   Document 76   Filed 05/19/23   Page 8 of 10   Page ID #:815

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES                                      Date: May 19, 2023

Page 8

> Accordingly, investors are cautioned not to place undue reliance
> on any particular estimates of equity research analysts or
> industry sources.

FAC at ¶ 94. Plaintiffs have not stated with particularity how this report includes any false or misleading representations regarding FDA-approved uses of Nuedexta. Thus, Plaintiffs' allegations are insufficient to state a claim for fraud.

### iii. Legally False Medicare Claims

Lastly, Plaintiffs allege that Avanir caused Plaintiffs' Assignors to pay for legally false claims in violation of Medicare rules. Opp'n at 11. Plaintiffs contend that Nuedexta qualified for Medicare Part D reimbursement only when provided for its FDA-approved use—the treatment of PBA. FAC ¶ 70. Nuedexta prescribed for off-label uses purportedly fails to meet the definition of a Medicare Part D drug because non-PBA uses are not medically accepted indications. FAC ¶ 74. Therefore, Avanir's "kickbacks to prescribers . . . cause[d] those prescribers' respective prescriptions to be tainted by fraud." FAC ¶ 128. "In other words, Plaintiffs do not state the kickbacks in of themselves are predicate acts, but rather, the kickbacks caused the underlying representations that prescribing physicians made for each prescription submission for payment to be fraudulent." Opp'n at 12.

The Court declines to lend credence to Plaintiffs' renewed attempt to allege predicate acts through kickbacks and promotion of Nuedexta for off-label uses. To hold otherwise would effectively convert any allegation of off-label promotion and kickbacks into RICO predicate acts so long as those activities result in claims to Medicare, which runs counter to multiple decisions of this Court and others. *See In re Epogen*, 590 F. Supp. 2d at 1290 (rejecting plaintiffs' "attempt to shoehorn allegations that Defendants have engaged in off-label promotion in violation of the FDCA into RICO"); *Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, 2014 WL 4104789, at *10 (D. Minn. Aug. 19, 2014) (violations of the Anti-Kickback Statute do not "constitute a predicate act of mail or wire fraud for purposes of RICO").

The cases Plaintiffs cite to in support of their false claim argument are distinguishable and provide no support for their cause of action. Plaintiffs cite to *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 2014 WL 2619014, at *7 (S.D.N.Y. June 10, 2014) for the proposition that Defendant's conduct in allegedly causing physicians to make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES                              Date: May 19, 2023

Page 9

"legally false" Medicare claims is actionable as fraud under § 1962(c). But in *Novartis*, the Court held that plaintiff relators stated a claim under the False Claims Act predicated on defendant pharmacies' alleged violations of the Anti-Kickback Statute. *Id*. at *3. *Novartis* does not speak to the requisite pleading standard for a Civil RICO claim. Likewise, Plaintiffs rely on *Humana Inc. v. Mallinckrodt ARD LLC*, 2020 WL 3041309, at *12 (C.D. Cal. Mar. 9, 2020) to argue allegations of doctors misrepresenting that their prescriptions were medically necessary and that they were not violating applicable state or federal laws are sufficient predicated acts under RICO ("it is not the violation of the [Anti-Kickback Statute] or the [False Claims Act] itself that is alleged to form the basis for the wire and mail fraud, *but the false certifications to Plaintiff about compliance with those statutes*"). Unlike *Humana*, Plaintiffs here have not alleged that Avanir made any false certifications to Plaintiffs, their Assignors, or anyone else about compliance with state or federal laws relating to kickbacks and false claims.

Accordingly, none of Plaintiffs' additional allegations support a reasonable inference that Avanir engaged in predicate acts of mail and wire fraud. The Court GRANTS Defendant's Motion to Dismiss Plaintiffs' claim under § 1962(c).

### B. Section 1962(d) Claim

The FAC further alleges violations of 18 U.S.C. § 1962(d) in the alternative. FAC ¶ 129. First, Plaintiffs claim that Avanir and its co-conspirators entered into an agreement to commit two or more predicate acts. *Id*. Second, Avanir's and its co-conspirators' actions were allegedly "in furtherance" of a RICO enterprise. *Id*. The participants in the alleged enterprise include "Avanir, the author-physicians who Avanir paid to produce the PRISM study, and the physicians who received kickbacks for prescribing Nuedexta for off-label purposes." FAC ¶ 130.

To establish a violation of § 1962(d), "Plaintiff must allege either (1) an agreement that is a substantive violation of RICO or (2) that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-01026-DOC-KES						Date: May 19, 2023

Page 10

      The Court finds that Plaintiffs fail to adequately allege that Defendant agreed with its purported co-conspirators to either commit two or more predicate offenses or act in furtherance of a RICO enterprise. As indicated above, Plaintiffs have not shown that Defendant's alleged kickback scheme and off-label promotion of Nuedexta constitute predicate acts under RICO, meaning Plaintiff's assertion that Avanir agreed to engage in this conduct is not enough to state a claim for conspiracy. Plaintiffs also do not plausibly allege an agreement to engage in a RICO enterprise. A RICO enterprise consists of "an ongoing organization" whose "associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The FAC includes only conclusory accusations of an alleged agreement by Avanir and its co-conspirators to "coordinate the enterprise's goals, conceal the existence of the enterprise, and conceal their individual roles." FAC ¶ 168. But these are general statements that fail to identify the "who, what, when, where and how" of the misconduct charged. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008). Without further factual enhancement, the Court cannot infer any agreement to engage in a RICO enterprise.

      Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's claim under § 1962(d) WITH PREJUDICE.

### IV.   Disposition

      For the reasons explained above, the Court **GRANTS** Defendant's Motion to Dismiss.

Initials of Deputy Clerk: kdu